FILED
2020 JUL 1 PM 12:35
CLERK
U.S. DISTRICT COURT

LOREN M. LAMBERT No. 5101
ARROW LEGAL SOLUTIONS GROUP, PC
*Attorney for Plaintiff*
266 East 7200 South
Midvale, Utah 84047
Telephone: (801) 568-0041
llambert@arrowlegalsolutions.com
office@arrowlegalsolutions.com

RECEIVED CLERK

JUN 2 9 2020

U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| HAWLEY MCKINNEY,<br><br>    Plaintiff,<br><br>vs.<br><br>RIGHT AT HOME IN-HOME CARE &<br>ASSISTANCE [RAH]; FRANK<br>BARTON, in his official capacity as the<br>owner of RAH, and personally for all non-<br>Title VII claims,<br><br>    Defendants. | **COMPLAINT AND JURY REQUEST**<br><br>Case: 2:20-cv-00472<br>Assigned To : Bennett, Jared C.<br>Assign. Date : 6/29/2020<br>Description: McKinney v. Right At Home In-Home Care & Assistance |

Plaintiff, through counsel, alleges, as follows:

### JURISDICTION AND VENUE

1. Plaintiff is a resident of Salt Lake County.

2. Defendant Right at Home (RAH) is a Utah business located in Salt Lake

County, and it is licensed to do business throughout Utah.

3. Defendant Frank Barton (Barton) is an individual residing in Salt Lake County,

Utah.

    4. The causes of action, asserted herein, occurred in Salt Lake County.

    5. The amount in controversy exceeds $350,000.

    6. On or around August 14, 2018, Plaintiff signed, notarized, and filed a charge of

discrimination against RAH, alleging:

> I started my employment on January 31, 2018 as a Caregiver. I am a female and
> believe that because of this I have been subjected to sexual harassment.
>
> On June 12, 2018 I took a concern to my supervisor about one of the patients. My
> supervisor told me that all patients have certain conditions that must be handled
> accordingly. Shortly after while attending to this same patient, the patient forced
> himself on me, pinning me to the ground and with his pants half way off, started
> thrusting against me. I was eventually able to get free and contact my supervisor. I
> believe that I was subjected to sexual harassment and the determining factor to be
> my gender.
>
> I believe that I have been subjected to sexual harassment because of my gender. I
> also believe that the actions of my employer are in violation of Title VII of the
> Civil Rights Act of 1964 and the Utah Antidiscrimination Act of 1965, both as
> amended.

    7. After processing her claim through the Labor Commission, several days after

May 11, 2020, Plaintiff received a Notice of Right to Sue. She had 90 days in which to

file this current action, and has done so.

## GENERAL ALLEGATIONS

    8. Plaintiffs began her employment with RAH on January 31, 2018, as a

Caregiver.

9. On June 12, 2018, around 7:30 a.m., RAH and Barton assigned Plaintiff to care for Patient Xhaqkaj.

10. Before accepting the assignment, RAH and Barton did not inform Plaintiff that patient Xhaqkaj had touched other caregivers' legs or had attempted to kiss their hands, and that, if she had been informed, she would not have accepted. In fact, Plaintiff was not instructed on how to interact with Patient Xhaqkaj nor warned in any manner about Patient Xhaqkaj.

11. Patient Xhaqkaj had repeatedly made sexual advances toward his previous caregivers by kissing their hands and touching their legs. RAH and Barton had an obligation to protect Plaintiff from such harassment.

12. Regarding this assignment, Plaintiff notified her care supervisor, Kirstie Ayers, via text message and phone call, that she had concerns about Patient Xhaqkaj because he was touching her. The supervisor disregarded Plaintiff's concerns and told Plaintiff that she needed to complete her assignment and that such problems were just part of working with certain types of patients, like Patient Xhaqkaj. More specifically, the supervisor expected that Patient Xhaqkaj would engage in sexually inappropriate actions against Ms. MCKINNEY and that this was merely a condition of her employment.

13. Plaintiffs proceeded with her assignment, and as was her concern, Patient Xhaqkaj proceeded to kiss her hands and cheek. Plaintiff told Patient Xhaqkaj "no,"

-3-

multiple times, and took videos to show her care supervisor. Plaintiff forcefully instructed Patient Xhaqkaj to leave her alone. Patient Xhaqkaj stopped for a while, but then touched and rubbed Plaintiff's leg and tried to put his hand up her shirt. At this point, Plaintiff again texted her care supervisor to tell her she felt uncomfortable with Patient Xhaqkaj because of his behavior.

14. Plaintiff's supervisor, Defendant RAH, again disregarded Ms. McKinney's concerns, telling Ms. McKinney that she needed to complete the shift, and that regardless of whether or not the patient continued to make sexual advances toward her, Ms. McKinney had to subject herself to this behavior and needed to simply tell the patient "no" if he tried to touch her again. At about 8:15 a.m. on same day, Patient Xhaqkaj approached Plaintiff and knocked her legs from under her. He then held her legs down, pulled his pants partially off, and forced her under his body. Patient Xhaqkaj then started to thrust himself against her with his pants half off. Plaintiff attempted to create space between her and Patient Xhaqkaj, but he became more aggressive and continued to thrust up against her and kiss her on the face. At this time, she was able to grab a pillow to cover her face in order to stop him from attempting to kiss her. Patient Xhaqkaj continued to forcefully hold her down with one hand, while trying to use the other hand to further disrobe. Only then was Plaintiff able to push Patient Xhaqkaj off of her and run outside.

15. Plaintiff then called her RAH care supervisor to state what had taken place.

-4-

The supervisor said they would send someone to get her.

16. As instructed, Plaintiff had followed RAH's policy by telling the patient "no," multiple times, and by reporting the harassment to her care supervisor. Plaintiff had also reported her concerns regarding Patient Xhaqkaj on the same day of the incident, prior to going to Patient Xhaqkaj's home.

17. RAH and Barton had the following policies in effect during Plaintiff's employment:

> (1) "Employees, when possible, are encouraged to inform the harasser directly that the conduct is unwelcome and must stop. Employees should report harassment to management at an early stage to prevent its escalation;" and (2) "You have the right to refuse any assignment offered to you." (Determination, p 2).

18. Plaintiff followed the policy by telling the patient "no," multiple times, and did report the harassment to her care supervisor. Plaintiff also reported her concerns regarding the patient on the same day of the incident prior to going to patient's home.

19. On July 10, 2018, Plaintiff filled out and filed, with the Utah Labor Commission, an Intake Questionnaire, alleging, among other things, that: 1) her charge was against "Right at Home," whose owner and highest official was "Frank Barton"; 2) her supervisor was Kirstie; 3) she was being paid at $11.20 per hour; 4) the harassment occurred on June 12, 2018, at the hands of Latif Xhaqkaj; and 5) that -

> [a]t about "7:30 am [Plaintiff] complained to [supervisor] Kirstie that [she] was feeling unsafe due to patient being handsy and taking video of the actions. Complained but was told to tell him 'no' as this was a part of his condition. Then

at about 8:15 AM patient came over to [her] and swooped [her] legs out from under [her] and held [her] legs and forced his body weight on [her] and he started thrusting against [her] with his pants half off while thrusting against [her]. When [she] attempted to create space he became more aggressive and continued to thrust against [her. She] was able to grab a pillow to put on face to stop him from kissing [her] face. He then attempted to use one hand to do something and that is when [she] was able to push him off and run outside. [She] then called Kirstie to state what happened, she would send someone to get [her].

## FIRST CAUSE OF ACTION
### Title VII Sexual Discrimination & Sexual Harassment.
### *(Patient Xhaqkaj).*

20. Paragraphs one through the end of this document are fully incorporated, herein. Defendant RAH and Frank Barton [Barton] had to protect Plaintiff from patrons, patients, customers, and third-party providers of its business who they knew, or should have known, would engage in sexual discrimination manifested through sexual harassment against its employees, including Plaintiff. They violated this duty when they assigned Plaintiff to care for Patient Xhaqkaj, who subjected her to sexual harassment and sexual assault by attempting to rape her.

21. Defendants, RAH and Barton, also had a duty to competently and reasonably vet patients that they assigned its workforce to care for, and to do so as an ongoing requirement, even after they had contracted to provide services to a patient. As part of this duty, they had an obligation to obtain and read medical records about the patients that they would assign to their workforce. Defendants RAH and Barton had a duty to seriously consider any complaints about their patients, conduct an investigation, and decline to

-6-

assign their workforce to patients who they knew, or should have known, were expected
or had a proclivity to engage in inappropriate sexual behavior, inappropriate touching,
and to sexually act out.

21. Prior to Defendants RAH and Bartons' assignment to Plaintiff to care for
Patient Xhaqkaj, other persons had warned Defendant RAH that Patient Xhaqkaj engaged
in alarming and inappropriate touching and sexual behavior, and that he had a proclivity
to, or was expected to, engage in such behavior with Plaintiff. Also, on information and
belief, prior to its assignment to Plaintiff to care for Patient Xhaqkaj, Defendant RAH
was aware that Patient Xhaqkaj's medical records indicated that Patient Xhaqkaj engaged
in alarming and inappropriate touching and sexual behavior, and that he had a proclivity
to, or was expected to, engage in this behavior with Plaintiff.

22. More specifically, prior to Defendants RAH and Bartons' assignment to
Plaintiff to care for Patient Xhaqkaj, Defendants RAH and Barton had received the
following information and complaints about Patient Xhaqkaj:

> a. Prior to RAH's assignment to Ms. McKinney to care for Patient Xhaqkaj, his
> daughter, Bookie, had warned them that Patient Xhaqkaj was "touchy," and that
> other caregivers had complained to Bookie that Patient Xhaqkaj had been
> inappropriately engaged in "romantic behaviors," and was "amorous and touchy,"
> and "would try to grab caregivers and things like that." In fact, RAH agents knew
> that there were "lots of caregivers that knew about" Patient Xhaqkaj's
> inappropriate touching.
>
> b. On 9/1/17, RAH employee, Ashley Gunnell, notified RAH owner and agent,
> Frank Barton, that during her 7-hour shift on 8/29/17, Patient Xhaqkaj "made

-7-

several inappropriate remarks toward [her].  Even sexual advances. [she] was very uncomfortable and made that known to him. He pursued in his behavior and [caused Ms. Gunnell to be] afraid." Ms. Gunnell indicated that she "really love[d her] job and ... patients but [she felt] violated." She continued that Patient Xhaqkaj had "tried to lick [her] face, neck, hands and made sexual gestures."  She then indicated that RAH could address any further questions to her, but she was "reluctant to say any more," and that her communication to them was "a difficult letter to write."

       I.  RAH, in conjunction with Ms. Gunnell's complaint, noted, on 9/7/17, that on 8/26/17, Patient Xhaqkaj had also engaged in "similar inappropriate sexual behavior with" RAH employee Aliyah Haley.

c. On 9/18/17, RAH employee, Donna Sherman, notified RAH owner and agent, Frank Barton, that she had concerns about her assigned shift to care for Patient Xhaqkaj because he had tried "touching [her] by grabbing [her] hands while folding up his blanket," and that he "[c]ontinually squeezes [her] hand with his arm, tri[ed] kissing [her] hand, [and would] motion for [her] to sit by him while [she was] taking his blood pressure." She further asserted that Patient Xhaqkaj knew "what he [was] doing when [he was] inappropriate because he look[ed] to see if Bookie [his daughter, BUKURIJE ZHAFALLI was] up or in the bathroom before he motions are tri[ed] touching [her]."

d. Britney Michelle Walker reported that when she cared for Patient Xhaqkaj, she "[h]ad to keep moving his hands," because he kept "touching [her] back when she was driving."

e. RAF did not share with Ms. McKinney the email communications it had received about Patient Xhaqkaj because "it's personal information regarding another person."

f. Hence, prior to Patient Xhaqkaj's assault and attempted rape of McKinney, RAH employees Ashley Waller, Donna Sherman, Aliyah Haley, Britney Michelle Walker, Patricia Soto, and probably more, had warned RAH that Patient Xhaqkaj had sexually assaulted them and could be expected to assault others.

23.  RAH and Barton expected their employee "caregivers ... [t]o deal with a lot of

inappropriate sexual behavior all the time..." because "it was [their] job."

24. Furthermore, even after Plaintiff complained to RAH that Patient Xhaqkaj was inappropriately touching her, Defendants RAH and Barton instructed her to continue working with Patient Xhaqkaj. They knew, or should have known, that Patient Xhaqkaj was expected to engage in alarming, assaultive, and sexually inappropriate behavior with Plaintiff and their employees. In breach of their duty, and contrary to what they knew or should have known, they assigned Plaintiff to care for Patient Xhaqkaj. Then, they exacerbated their breach of this duty when they failed to protect Plaintiff, thereby causing her expected serious physical and mental harm.

## ALTERNATIVE SECOND CAUSE OF ACTION
### Intentional and Expected Infliction of Physical and Mental Harm

25. Paragraphs one thru the end of this document are fully incorporated, herein.

26. In the event that Defendants RAH and Barton allege as affirmative defenses or assert in its presentation of the evidence, and attempt to establish, either that: 1) Plaintiff was not acting within the scope and course of her employment when Patient Xhaqkaj sexually harassed and assaulted her, 2) Patient Xhaqkaj did not have the mental capacity to sexually harass and assault her, and therefore they cannot be liable under Title VII, 3) it was Plaintiff's job requirement and duty to care for patients such as Patient Xhaqkaj, who due to their diminished capacity engaged in sexual-harassment and sexually assaultive behavior, or that 4) Plaintiff somehow consented to be subjected to sexual harassment and

sexually assaultive behavior, or any variation of these defenses - Plaintiff as an alternative theory of recovery asserts the following. Plaintiff alleges that RAH and Barton had a duty to competently and reasonably vet patients that they assigned its workforce to care for, and to do so as an ongoing requirement, even after they had contracted to provide services to a patient. As part of this duty, they had an obligation to obtain and read medical records about the patients that they would assign to their workforce. They further had a duty to seriously consider any complaints about its patients, conduct an investigation, and decline to assign its workforce to patients who they knew, or should have known, were expected to engage in inappropriate sexual behavior, inappropriate touching, and to sexually act out.

27. Prior to Defendants RAH and Bartons' assignment to Plaintiff to care for Patient Xhaqkaj, other persons had warned Defendants RAH and Barton that Patient Xhaqkaj engaged in alarming and inappropriate touching and sexual behavior, and that he was expected to engage in such behavior with Plaintiff. Also, on information and belief, prior to its assignment to Plaintiff to care for Patient Xhaqkaj, Defendants RAH and Barton were aware that Patient Xhaqkaj's medical records indicated that Patient Xhaqkaj engaged in alarming and inappropriate touching and sexual behavior, and that he was expected to engage in this behavior with Plaintiff.

28. More specifically, prior to RAH and Bartons' assignment to Plaintiff to care

for Patient Xhaqkaj, Defendant RAH and Barton had serious and substantial information and complaints, as noted above, about Patient Xhaqkaj and his intention to engage in sexual-harassment and sexually assaultive behavior.

29.  Defendants RAH and Barton expected their employee "caregivers ... [t]o deal with a lot of inappropriate sexual behavior all the time..." because "it was [their] job."

30. Furthermore, even after Plaintiff complained to RAH and Barton that Patient Xhaqkaj was inappropriately touching her, Defendants RAH and Barton instructed her to continue working with Patient Xhaqkaj. They knew, or should have known, that Patient Xhaqkaj was expected to engage in alarming, assaultive, and sexually inappropriate behavior with Plaintiff and its employees. In breach of their duty, and contrary to what they knew or should have known, they assigned Plaintiff to care for Patient Xhaqkaj. Then, they exacerbated their breach of this duty when they failed to protect Plaintiff, thereby causing her expected serious physical and mental harm.

## PROVISO

31. This Complaint was not drafted by Plaintiff. It was drafted by her attorney after speaking with Plaintiff and reviewing all of the available evidence. Although Plaintiff and her counsel are confident that the core allegations of her complaint are valid, the exact details on what occurred to Plaintiff, and who specifically caused Plaintiff harm, may vary from the alleged facts once information is exchanged through the mandatory court

-11-

discovery process. In conclusion, this Complaint is not Plaintiff's statement. It is a

compilation of information about what Plaintiff believes, to the best of her and her

counsel's knowledge and information regarding what the facts will show. The Complaint

should be read as a whole, with all allegations linked to each other. The amounts pled

herein are not to be meant to limit the jury's discretion to award more or less damages

based upon the facts of this case, alone.

31. Pursuant to the doctrines of respondeat superior or agency, Defendant RAH

and Barton are liable due to the actions of their agents. Pursuant to these legal principles,

Plaintiff in all paragraphs above since RAH and Barton are responsible for their agents

actions, they attributed as having done the above alleged behaviors.

## **JURY REQUEST**

Plaintiff requests a jury trial in this action.

WHEREFORE, having fully stated her claims, Plaintiff prays that the Court

assemble a jury to hear this case, and that this Court find Defendants RAH and Barton

liable to Plaintiff for each cause of action, and award Plaintiff the following:

1. General damages, as determined in a trial, but not less than $350,000;

2. Special damages, as determined in a trial, but not less than $25,000;

3. Punitive damages of not less than $50,000;

4. Attorneys fees and costs;

-12-

5. Any other relief the court deems just and equitable;

6. A jury request.

DATED this 23 day of June 2020.

ARROW LEGAL SOLUTIONS GROUP, PC

Loren M. Lambert  Attorney for Plaintiff